1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                    AT TACOMA

10   MICHAEL ANTHONY FEOLA,

11                         Petitioner,              CASE NO. 3:24-cv-05078-JHC-GJL

          v.                                        REPORT AND RECOMMENDATION
12
     KAREN ARNOLD,                                  Noting Date: **September 22, 2025**
13
                          Respondent.
14

15          The District Court has referred this 28 U.S.C. § 2254 action to United States Magistrate

16   Judge Grady J. Leupold. In his Amended Petition, Petitioner Michael Anthony Feola seeks

17   federal habeas relief from his state court convictions and sentence on three Grounds:

18          1.      Ground One—RCW 9A.44.020(1) is "Unconstitutional" "on its face" for
                    NO reasonable ground violating U.S. Const. 14th Amend.; Wash. Const.
19                  Art. 1 § 12 violating "Separation of powers" even appearing Pre-trial as
                    "Bill of Attainder" contrary to the U.S. Const. Art. 1 § 10.
20
            2.      Ground Two—When a sentence appears to exceed legislative authority, the
21                  trial court has been oustered of competence [sic], violating the U.S. Const.
                    14th amend. "due process" "equal protection" also Wa. Const. Art. 1 § 2, §
22                  3, and § 29.

23          3.      Ground Three—It appears petitioner has suffered abrogation of his U.S.
                    Const. 6th amend right to adversarial competent counsel denial of fair trial
24                  and U.S. Const. 14th amend. "due process," violating Wash. Const. Art. 1 §

2 "supreme" § 3 "due process," § 22 "effective Counsel," and § 29 "Mandatory."

Dkt. 23 at 16–25.

After considering the record, the Court concludes that Grounds One and Two are procedurally defaulted and Petitioner has not made a sufficient showing to overcome his default. As for Ground Three, the Court finds the state courts' adjudication was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of fact. Finally, the Court finds that no evidentiary hearing is necessary.

Therefore, the Court recommends that the Amended Petition (Dkt. 23) be **DENIED**, that this action be **DISMISSED with prejudice**, and that a certificate of appealability not be issued.

## I.    BACKGROUND

### A.    Factual Background

Petitioner, a state prisoner, challenges his current confinement pursuant to the state court judgment and sentence imposed by the Superior Court of Washington for Kitsap County ("trial court") in *State of Washington v. Michael Anthony Feola*, Case No. 17-1-01565-1 (judgment entered Apr. 8, 2019). Dkt. 23. The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

I. BACKGROUND

On October 15, 2017, Feola was arrested during an operation run by the Missing and Exploited Children Task Force (MECTF). MECTF performs proactive operations designed to identify people who are looking to commit sexual assault crimes against children. Using undercover personas and sites like Craigslist, MECTF poses as adults providing children for sex acts or runaway children seeking sex with adults.

Following Feola's arrest, the State charged him with attempted first-degree rape of a child (count I), attempted second-degree rape of a child (count II), attempted commercial sexual abuse of a minor (count III), and communication with a minor for immoral purposes (count IV).

## II. EVIDENCE AT TRIAL

At Feola's trial, the State introduced testimony and evidence explaining the operation and its involvement with Feola. MECTF posted an advertisement on the casual encounters section of Craigslist, the title of which stated, "Crazy and young. Looking to explore, dash, W4M, which means 'women for men.'" 6 Verbatim Rep. of Proc. (VRP) at 656. The text of the advertisement read, "Bored and home alone…been watching videos all day. Really looking to meet a clean ddf [disease and drug free] guy that can teach me what it's like to be an adult. Hmu [hit me up] if interested…I'm lots of fun." Clerk's Papers (CP) at 198 (first alteration in original).

Over the next several days, an undercover Washington State Patrol detective answered responses to the advertisement by posing as "Sam," a fictitious 13-year-old girl. Soon, Feola answered the advertisement and exchanged almost 500 hundred text messages back and forth with the detective posing as "Sam." The text messages showed that Feola initially responded to the Craigslist advertisement with his cell phone number and requested to be called "daddy." CP at 323. "Sam" replied and said she was 13 years old, sending Feola a photo of herself and an 11-year-old friend, named "Anna."

The texts soon turned to discussions of the ages of the two girls and potential sexual acts. In response to the photograph that "Sam" sent him, Feola asked, "How old— excuse me—you are how old?" 6 VRP at 665. "Sam" again told Feola that she was 13 years old, and Feola responded, "We can talk. I am 44." 6 VRP at 666. "Sam" asked Feola, "What kind of fun are you into? I am pretty open. Sometimes that scares guys. Threesomes?" 6 VRP at 666. In response, Feola asked who the threesome would be with, and "Sam" stated that it would be with her and "Anna," the "girl in the back of the pic" who was 11 years old, and asked if that was okay. 6 VRP at 666. Feola responded, "Maybe. Any other friends. Maybe older?" 6 VRP at 666. "Sam" responded that all her friends were around her age. Feola told "Sam" that he "want[ed] to play with you two so bad." 6 VRP at 671. On the same day that the text exchange began, Feola sent "Sam" a photograph of his penis. As the hundreds of text exchanges progressed, Feola graphically described numerous sex acts that he wanted to perform with "Sam" and "Anna."

"Sam" repeatedly asked Feola to bring gifts to her and "Anna." At various times, Feola responded, "I will try," "I will take care of my girls. Don't worry," "When we all get together I will take care of you two," "I might be able to do $25…So if we meet on Tuesday I will have a present for you." 6 VRP at 682, 689, 711–12. Feola told "Sam" on several occasions that he suspected she was a cop because she would not send him a nude photograph. For example, Feola said, "I am just getting leery because you won't send a pic. If I show up, and it's a sting, we don't have to be naked for me to be in trouble." 6 VRP at 676. Later he said, "A cop can't send nude pics," "If you're not a cop then send some pics," "Send pics to prove you're not a cop," "I am trusting that you are not a cop. Why can't you sneak out tomorrow? We play in the truck," "Now I am starting to get nervous about the

situation because now you are starting to sound like a cop," "I need you to prove to me you are not a cop." 6 VRP at 699–700, 706. Nevertheless, Feola continued his sexually explicit messages despite his suspicions.

Eventually, the detective decided to have Feola go to a predetermined location to ascertain whether Feola was serious about meeting with the children. Feola was directed to go to a specific 7-Eleven and send "Sam" his picture before she would give him the address where she was. Following this exchange, there was a nearly 24-hour break in communication.

Feola reinitiated contact with "Sam" and sent her the photograph that she requested of him at the 7-Eleven. There was another break in communication—this time lasting more than a day.

Then, Feola reinitiated contact again with "Sam" saying, "Good morning, baby girl. We need to talk, please." 6 VRP at 707-708. Feola continued,

> If we make an attempt to meet, then we need to meet. You need to understand where I am coming from. If you were a cop I would be spending a lot of time in jail. I would also lose my family and everything that I have worked for. I just need to make sure you are not a cop. Like I said before, please stick around, and let's meet on Tuesday.

6 VRP at 709–10.

The two made a plan to meet in person. Feola drove to "Sam's" location provided to him by the detective, went into the house, and was immediately arrested by law enforcement. In Feola's car, law enforcement recovered a bottle of lubricant, $250 in cash, a cell phone, and his wallet. At the time of his arrest, Feola made inconsistent statements about his intent, first suggesting he thought it was only fantasy but later admitting he was interested in sex acts with "Sam."

Dkt. 26-1 at Ex. 2 (footnotes omitted).

The State did not seek admission of Petitioner's inconsistent, post-arrest statements at trial, and Petitioner did not testify. *Id.* at 21. At the conclusion of trial, the jury found Petitioner guilty on all four counts. *Id.* The trial court entered the judgment of conviction on April 8, 2019, and sentenced Petitioner to a total minimum term of 210 months of incarceration with a maximum term of life in incarceration. *Id.* at Ex. 1.

REPORT AND RECOMMENDATION - 4

1   **B.      Procedural Background**

2           1.      Direct Appeal

3           Petitioner then filed a timely direct appeal. *Id.* at Ex. 3. The sole challenge made on direct

4   appeal was to a scrivener's error in the written record of the financial obligations imposed as part

5   of Petitioner's judgment and sentence. *Id.* The State conceded the error, and, on August 18,

6   2020, the state court of appeals remanded the matter to the trial court for correction of the written

7   record. *Id.* at Exs. 4–5. Petitioner had thirty days to seek review in the Washington State

8   Supreme Court ("state supreme court"). *See* Wash. R. App. P. 13.4(a). He did not do so, and the

9   state court of appeals issued its mandate on October 23, 2020. *Id.* at Ex. 6.

10          2.      State Collateral Review

11          On August 6, 2021, Petitioner sought state collateral review of his conviction and

12  sentence by filing his first personal restraint petition ("PRP") in the state court of appeals. *Id.* at

13  Ex. 7–11. The first PRP raised the following issues for review: (1) whether Petitioner's

14  conviction on each count was supported by sufficient evidence, (2) whether the trial court erred

15  in not providing an entrapment instruction to the jury, and (3) whether Petitioner received

16  effective assistance of trial counsel with regard to an entrapment defense. *Id.* at Ex. 7.

17          Addressing each issue on the merits, the state court of appeals concluded that Petitioner

18  was not entitled to relief and denied the first PRP. *Id.* at Ex. 2.

19          Petitioner then sought discretionary review of the following issues:

20          1.      Where the Petitioner presented "Some Evidence" of Government
                    inducement and lack of predisposition, was the lower court's ruling that
21                  Feola was not entitled to an entrapment instruction because he failed to
                    show actual and substantial prejudice erroneous?
22
23          2.      Did the lower court err, [sic] in its ruling that Feola did not suffer ineffective
                    assistance of counsel regarding failure to present evidence relevant to
24                  entrapment because he could not show prejudice?

*Id.* at Ex. 12. The state supreme court denied Petitioner's motion for discretionary review, and the state court of appeals issued a certificate of finality on February 13, 2024. *Id.* at Exs. 13–14.

On March 14, 2024, Petitioner filed a second PRP, presenting the following issues for review:

1. RCW 9A.44.020(1) is "Unconstitutional" "On its face" for No reasonable ground violating U.S. const. 14th amend.; Wash. const. Art. 1 § 12, Violating "Separation of powers" even Appearing Pre-trial as "Bill of attainder" contrary to the U.S. Const Art 1 § 10.

2. When a sentence appears to exceed legislative authority, the trial court has been oustered of competance [sic], violating the U.S. const. 14th amend "due process" "equal protection" also Wash. Const. Art. 1 § 2 § 3 § 29.

3. It appears petitioner has suffered abrogation of his U.S. const. 6th amend right to adversarial competent counsel denial of fair trial and U.S. const. 14th amend. "due process," Violating Wash. const. Art. 1 § 2 "supreme" § 3 due process § 22 "Effective Counsel" § 29 Mandatory.

*Id* at Ex. 15. The state court of appeals dismissed the second PRP as an untimely mixed petition under RCW § 10.73.090. *Id.* at Ex. 16.

Petitioner sought discretionary review by the state supreme court, arguing the following:

1. Petitioner believes that the lifetime imprisonment is unconstitutional due that it applies to only one group of people which is prejudice.

2. Petitioner received ineffective assistance of post conviction counsel in 2023 which was found by this court on 12/20/2023 [referencing ruling denying review of first PRP]. If Petitioner did receive effective counsel Petitioner would have won his case at that time.

3. Petitioner believes that R.C.W. 9A.44.020(1) is unconstitutional because it violates the U.S. Constitution and Washington States Constitution because it minimizes or eliminates the burden of proof beyond a reasonable doubt the State must establish to convict.

*Id.* at Ex. 17. The state supreme court declined discretionary review, concluding the second PRP was properly dismissed as untimely under Washington State law. *Id.* at Ex. 18. The state court of appeals issued the certificate of finality on July 9, 2025. *Id.* at Ex. 19.

3.     <u>Federal Collateral Review</u>

Petitioner imitated this action seeking federal collateral review of his conviction and sentence on January 30, 2024. Dkt. 1. Petitioner also moved for a stay of these proceedings so that he may attempt to exhaust his state court remedies Dkt. 7. Respondent did not oppose Petitioner's request for a stay. Dkt. 10. On March 7, 2024, the Court granted Petitioner's request for a stay and directed him to file status reports regarding his state court proceedings. Dkt. 11. On June 5, 2025, Petitioner filed two status reports advising the Court that the challenges to his conviction in the state courts had advanced through the final level of review. Dkts. 20, 21. The Court then lifted the stay and directed Petitioner to file an amended petition. Dkt. 22.

Petitioner filed his Amended Petition on July 11, 2025. Dkt. 23. Respondent filed an Answer and State Court Record on August 4, 2025. Dkt. 25; Dkt. 26. The deadline for Petitioner to file a response to the Answer expired on August 25, 2025, without a submission. *See* Dkt. 24 ("Petitioner may file and serve a response not later than 21 days after the filing date of the answer."). Respondent has not filed an optional reply. *Id.* Thus, the Amended Petition is ripe for consideration.

## II.     DISCUSSION

Petitioner raises the following Grounds for federal habeas relief in his Amended Petition:

1.     Ground One—RCW 9A.44.020(1) is "Unconstitutional" "on its face" for NO reasonable ground violating U.S. Const. 14th Amend.; Wash. Const. Art. 1 § 12 violating "Separation of powers" even appearing Pre-trial as "Bill of Attainder" contrary to the U.S. Const. Art. 1 § 10.

2.     Ground Two—When a sentence appears to exceed legislative authority, the trial court has been oustered of competence [sic], violating the U.S. Const. 14th amend. "due process" "equal protection" also Wa. Const. Art. 1 § 2, § 3, and § 29.

3.     Ground Three—It appears petitioner has suffered abrogation of his U.S. Const. 6th amend right to adversarial competent counsel denial of fair trial and U.S. Const. 14th amend. "due process," violating Wash. Const. Art. 1 §

2 "supreme" § 3 "due process," § 22 "effective Counsel," and § 29 "Mandatory."

Dkt. 23 at 16–25.

In her Answer, Respondent argues that Grounds One and Two were not properly exhausted in the state courts and are now procedurally barred under Washington State law. Dkt. 25 at 7, 9–12. As such, Respondent contends the allegedly unexhausted claims asserted in Grounds One and Two are procedurally defaulted and barred from federal review. *Id.* Respondent does not invoke exhaustion or procedural default with respect to Ground Three,[1] arguing, instead, that Ground Three should be denied on the merits because the state courts' adjudication of that claim was not contrary to or an unreasonable application of clearly established federal law, nor did it rest on an unreasonable determination of fact. *Id.* at 7, 13–17.

## A.     Exhaustion and Procedural Default (Grounds One and Two)

Respondent first argues that Grounds One and Two are unexhausted and procedurally defaulted. Dkt. 25 at 7, 9–12. The Court agrees, in part, with Respondent's arguments and concludes that Grounds One and Two are procedurally defaulted and barred from federal review unless Petitioner can overcome his default.

### 1.     Applicable Law

Exhaustion and procedural default are related but distinct doctrines governing federal habeas review. "[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270,

---

[1]Respondent has waived the procedural default defense on Ground Three by failing to raise it in the Answer. *See Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). And, while exhaustion has not been expressly waived by Respondent, the Court may address Ground Three on the merits without first determining whether it was exhausted in the state courts. *Franklin*, 290 F.3d at 1230 (unlike procedural default, which is subject to implied waiver, exhaustion must be expressly waived by the respondent) (citing 28 U.S.C. § 2254(b)(3)); *Padilla v. Terhune*, 309 F.3d 614, 621 (9th Cir. 2002) (the district court may deny a § 2254 petition on the merits without first addressing exhaustion, irrespective of whether the defense was waived by respondent) (citing 28 U.S.C. § 2254(b)(2)).

1    275 (1971). Exhaustion "refers only to remedies still available at the time of the federal petition"

2    and asks whether the petitioner may still obtain the relief he seeks in the state system. *Engle v.*

3    *Isaac*, 456 U.S. 107, 125 n.28 (1982); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851

4    (1999) (Stevens, J., dissenting). A petitioner's federal claims will be considered exhausted only

5    after "the state courts [have been afforded] a meaningful opportunity to consider allegations of

6    legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254,

7    257 (1986). In order to provide the state courts with the requisite "opportunity" to consider his

8    federal claims, a petitioner must "fairly present" his claims to each appropriate state court for

9    review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*,

10   541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v.*

11   *Boerckel*, 526 U.S. 838, 845 (1999)).

12           Procedural default, on the other hand, refers to federal claims that cannot, at the time the

13   federal court reviews the habeas petition, receive consideration in the state courts because of an

14   adequate and independent state procedural rule barring review. *Franklin*, 290 F.3d at 1230–31

15   (citations omitted); *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *O'Sullivan*, 526 U.S. at

16   845. Procedural default precludes the federal courts from reviewing a claim (1) when the state

17   court has, in fact, been presented with the claim but declined to reach the issue for procedural

18   reasons or (2) when it is clear the state court would, if presented with the federal claim, find the

19   claim procedurally barred. *Franklin*, 290 F.3d at 1230–3. In other words, if an adequate and

20   independent state procedural rule precludes the petitioner from raising his claim at the state level,

21   the claim is considered "procedurally defaulted," and the federal courts are barred from

22   performing a merits review. *See Coleman*, 501 U.S. at 731–32; *O'Sullivan*, 526 U.S. at 845;

23   *Williams v. Ryan*, 2019 WL 4750235, at *3 (D. Ariz. Sept. 30, 2019) ("If a state court expressly

24   applied a procedural bar, and that state procedural bar is both independent and adequate, a

1    federal habeas court cannot review the claim on the merits.") (citing *Ylst v. Nunnemaker,* 501

2    U.S. 797, 801 (1991)).

3        2.    <u>Analysis</u>

4        Here, Petitioner fairly presented the federal claims in Grounds One and Two to the state

5    court of appeals in his second PRP, and again in his motion for discretionary review to the state

6    supreme court. *See* Dkt. 26-1 at Exs. 15, 17. In the second PRP, Petitioner specifically referenced

7    the constitutional doctrines, provisions, and amendments upon which his federal claims in both

8    Grounds were based. *Id.* at Ex. 15. For his federal claim challenging the one-year limitations

9    period on PRPs filed in Washington State courts (raised here in Ground One), Petitioner

10   referenced the Fourteenth Amendment to the United States Constitution, the Separation-of-

11   Powers doctrine, and the prohibition on Bills of Attainder in Article I, Section 10 of the United

12   States Constitution. *Id.* For his federal claim challenging the imposition of life sentences (raised

13   here in Ground Two), Petitioner referenced the Equal Protection Clause and Due Process Clause

14   of the Fourteenth Amendment. *Id.* Although Petitioner did not include such specific

15   constitutional references in his motion for discretionary review, *id* at Ex. 17, the state supreme

16   court was nonetheless alerted to the nature of Petitioner's federal claims because his motion

17   included the lower court's decision as an exhibit and could thus be clearly understood in context

18   of the adjudication below. *See Peterson v. Lampert*, 319 F.3d 1153, 1157 (9th Cir. 2003).

19       Respondent, however, maintains that the federal claims in Grounds One and Two are

20   unexhausted because, while presented with the claims, the state courts declined to reach them for

21   procedural reasons. Dkt. 25 at 7, 9–12. In so arguing, Respondent conflates the criteria for

22   exhaustion and procedural default. In particular, "[t]he exhaustion doctrine applies when the state

23   court has *never* been presented with an opportunity to consider a petitioner's claims and that

24   opportunity *may still* be available to the petitioner under state law." *Franklin*, 290 F.3d at 1230

1    (emphasis added). By contrast, a federal claim is procedurally defaulted when it is clear a

2    petitioner—who may or may not have presented his claims at each appropriate level of review—

3    has "no further recourse in the state courts." *Id.* at 1231. Indeed, the Supreme Court has observed

4    that "[a] habeas petitioner who has defaulted his federal claims in state court meets the technical

5    requirements for exhaustion; there are no state remedies any longer 'available' to him."

6    *Coleman,* 501 U.S. 732.

7        In this case, Petitioner has no further recourse in the state courts for the federal claims in

8    Grounds One and Two. As such, both Grounds—though technically exhausted for the purpose of

9    federal habeas review—are procedurally defaulted. When presented with the claims in

10    Petitioner's second PRP, the state courts expressly declined to reach them for procedural

11    reasons—namely, that the second PRP was untimely and procedurally barred pursuant to RCW §

12    10.73.090. Dkt. 26-1 at Exs. 16, 18. The Ninth Circuit has previously determined that RCW §

13    10.73.090 "provides an independent and adequate state ground to bar federal review." *See also*

14    *Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004) (citing *Shumway v. Payne*, 223 F.3d 982, 989

15    (9th Cir. 2000)). Because the state courts expressly applied an adequate and independent state

16    procedural bar to Petitioner's federal claims in Grounds One and Two, both Grounds are

17    procedurally defaulted and barred from federal review unless Petitioner has made a sufficient

18    showing to overcome his procedural default.

19    **B.    Overcoming Procedural Default (Grounds One and Two)**

20        Respondent next argues that Petitioner has not made a sufficient showing to overcome his

21    default by demonstrating either cause and prejudice for the default or that a fundamental

22    miscarriage of justice has occurred in his case. Dkt. 25 at 10. Because Petitioner has not made

23    such a showing in his Amended Petition, in the materials submitted in support thereof, or by

24

1   filing a response to Respondent's Answer, the Court agrees and concludes Petitioner has failed to

2   overcome his procedural default of Grounds One and Two.

3          1.    <u>Applicable Law</u>

4          A procedural default will be excused and a petitioner will be entitled to a review of his

5   claim on the merits if he "can demonstrate cause for the default and actual prejudice as a result of

6   the alleged violation of federal law, or demonstrate that failure to consider the claims will result

7   in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir.

8   1998) (citing *Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show some

9   objective factor external to the defense prevented him from complying with the state's

10  procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

11  To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the

12  errors at his trial created a possibility of prejudice, but that they worked to his actual and

13  substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

14  *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

15         Only in an "extraordinary case" may the habeas court grant the writ without a showing of

16  cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional

17  violation has resulted in the conviction of a defendant who is actually innocent. *Murray*, 477

18  U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, the petitioner

19  must first identify "new reliable evidence" that was not presented at trial, such as "exculpatory

20  scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup v.*

21  *Delo*, 513 U.S. 298, 324 (1995). Viewing all the evidence in light of his new reliable evidence,

22  the petitioner must then show that "it is more likely than not that no reasonable juror would have

23  found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006)

24  (citing *Schlup*, 513 U.S. at 327).

2.    <u>Analysis</u>

Here, Petitioner has not demonstrated cause and prejudice or a fundamental miscarriage of justice sufficient to overcome his procedural default of Grounds One and Two. Petitioner has not shown cause for his default by demonstrating an objective factor external to his defense that prevented him from complying with the Washington State's procedural bar on untimely PRPs. Moreover, Petitioner has not shown prejudice for the default by identifying a trial error that worked to his actual and substantial disadvantage, infecting his entire trial with errors of a constitutional dimension. Furthermore, Petitioner has failed to demonstrate that a fundamental miscarriage of justice has occurred in his case by presenting new, reliable evidence of his innocence and by demonstrating it is more likely than not that no reasonable juror would have convicted him in light of such evidence.

Rather, the record before the Court shows that Petitioner simply failed to present the federal claims in Grounds One and Two for review according to Washington State procedural rules. Therefore, Petitioner has not overcome his procedural default and Grounds One and Two. Accordingly, the Petition as to these grounds should be **DENIED**.

**C.    Merits Review (Ground Three)**

Finally, Respondent contends that Petitioner's ineffective-assistance-of-counsel claim in Ground Three was fairly presented to the state courts and, therefore, can be addressed on the merits. Dkt. 25 at 7. Respondent argues that Ground Three should be denied because Petitioner has not shown the state courts' adjudication of his claim was contrary to or an unreasonable application of clearly established federal law, nor has he shown that the decision reached in the state courts rested upon an unreasonable determination of the facts. *Id.* at 13–17. The Court agrees and will first set forth the applicable law for merits review under the Anti-Terrorism and

Effective Death Penalty Act ("AEDPA") and for claims of ineffective assistance of counsel before discussing the merits of Ground Three.

      1.    <u>Applicable Law</u>

      ***AEDPA Merits Review.*** Under AEDPA, a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

      Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Dretke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

***Ineffective Assistance of Counsel***. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

In *Strickland*, the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error. *Id.* at 690. To succeed on this prong, a petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the

1  defendant must overcome the presumption that, under the circumstances, the challenged action

2  might be considered sound trial strategy." *Id.* at 689 (citation omitted).

3       Under the second prong, a petitioner must establish there is a reasonable probability the

4  results would have been different but-for counsel's deficient performance. *Kimmelman v.*

5  *Morrison*, 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a

6  probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court "need not

7  determine whether counsel's performance was deficient before examining the prejudice suffered

8  by the defendant as a result of the alleged deficiencies…. If it is easier to dispose of an

9  ineffectiveness claim on the ground of lack of sufficient prejudice, …that course should be

10  followed." *Id*. at 697.

11       Similarly, if a fair-minded jurist could agree with the state courts' decision on either

12  prong of the *Strickland* standard, then federal habeas relief for ineffective assistance of counsel is

13  unavailable. *Shinn v. Kayer*, 592 U.S. 111, 118–19 (2020). Furthermore, federal courts sitting in

14  habeas review afford considerable deference to a state courts' adjudication of an ineffective-

15  assistance-of-counsel claim. *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). This deference is

16  "near its apex" when the state courts' decision "turns on general, fact-driven standards" often

17  applied to such claims. *Sexton v. Beaudreaux*, 585 U.S. 961, 968 (2018).

18      2.   <u>Analysis</u>

19       The factual basis of Petitioner's ineffective-assistance-of-counsel claim in Ground Three

20  is not included in the Amended Petition itself and, instead, Petitioner directs the Court to the

21  "affidavit" submitted in support. Dkt. 23 at 25–53. Petitioner's "affidavit" is disorganized,

22  difficult to decipher, and raises a litany of complaints and arguments regarding his state court

23  proceedings. *Id.* at 29–53. To the extent the factual basis of Ground Three can be discerned from

24

his materials, Petitioner's primary contention appears to involve his alleged inability to present a meaningful entrapment defense. *Id.* at 29–53.

Additionally, in her Answer, Respondent treated Ground Three as challenging trial counsel's performance regarding the presentation of an entrapment defense, and Petitioner failed to file timely response objecting to this construction of his claim. Dkt. 25 at 13–17. Because no other factual basis for Ground Three is properly presented to the Court and because Petitioner has not raised any timely objection to this construction of his claim, the Court construes Ground Three as challenging trial counsel's performance regarding the presentation of an entrapment defense.

Petitioner raised an ineffective-assistance-of-counsel claim on this same basis in his first PRP, which, unlike his second PRP, was not barred from review based on a Washington State procedural rule. Dkt. 26-1 at Ex. 7. In denying relief on that claim, the state court of appeals assumed, without deciding, that Petitioner had shown his trial counsel performed deficiently in failing to present an entrapment defense. *Id.* at Ex. 2. Even assuming *arguendo* that the first *Strickland* prong was satisfied, the court concluded that Petitioner's claim failed at the second prong because he was not prejudiced by the allegedly deficient performance. *Id.*

The full analysis of the state court of appeals is as follows:

A. Legal Principles

We review ineffective assistance of counsel claims de novo. *State v. Vazquez*, 198 Wn.2d 239, 249, 494 P.3d 424 (2021). To show ineffective assistance of counsel, a petitioner must demonstrate that their attorney's performance was deficient and the deficient performance prejudiced them. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (known as the two-prong *Strickland* test); *Yates*, 177 Wn.2d at 35. Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). We strongly presume that counsel's performance was reasonable. *Id.* Generally, counsel's performance is not deficient when counsel's conduct can be characterized as legitimate trial strategy or tactic. *Id.* A failure to request a particular jury instruction is not deficient performance when the trial court would not have given the instruction. *See State v. Powell*, 150 Wn. App. 139, 154, 206 P.3d 703 (2009).

To show prejudice—the second prong of the *Strickland* test—the petitioner must demonstrate a reasonable probability that the outcome of the proceeding would have been different if counsel had not performed deficiently. *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020), *aff'd*, 197 Wn.2d 740, 487 P.3d 893 (2021). If a petitioner establishes prejudice under the *Strickland* test, they have necessarily met their burden to show actual and substantial prejudice in the context of a PRP. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

B. APPLICATION

Feola contends that his trial counsel was deficient for failing to argue that the record contained sufficient evidence to present the question of entrapment to a jury. He argues that there was no strategic reason for counsel's failure to point the court to the correct standard in determining whether the instruction should be given. Feola claims that trial counsel should have been aware of the correct standard clarified in *Arbogast* because that decision relied on previously established case law.

Feola also contends that his trial counsel failed to offer admissible evidence of his lack of criminal history. This was deficient performance, according to Feola, because his lack of criminal history was admissible and relevant to entrapment. Feola contends that these errors by counsel prejudiced him because there is a reasonable likelihood that had the jury been presented with all the relevant evidence and instructed on the elements's entrapment, it would have found by a preponderance of the evidence that Feola was entrapped, and the outcome of the trial would be different.

Here again, assuming, without deciding, that Feola can show deficient performance, he cannot meet the second prong of the *Strickland* test—that he was prejudiced. Beyond conclusory assertions, Feola fails to show there was a reasonable probability (not possibility) that the jury would have found by a preponderance of the evidence that he was entrapped if the jury had been given the

entrapment instruction, especially given the strength of the State's case and the relatively weak evidence showing inducement that Feola isolates on appeal. *See Meippen*, 193 Wn.2d at 317 (merely showing that an error created a *possibility* of prejudice is insufficient for collateral relief).

Feola's related argument about his counsel's failure to offer evidence of Feola's lack of criminal history is equally meritless. Even if his counsel had attempted to seek admission of this evidence and was successful, Feola makes no effort to demonstrate a reasonable probability that the outcome of the proceeding would have been different in the face of strong evidence of guilt presented by the State. Therefore, we hold that Feola's ineffective assistance of counsel arguments fail.

*Id.* The state court of appeals expanded upon the strong evidence of Petitioner's guilt when addressing the trial court's refusal to instruct the jury on entrapment:

Feola simply claims that because entrapment is a complete defense to the charged crimes, it is more likely than not that had the jury been properly instructed, they would not have found him guilty. But he makes no attempt at demonstrating how the instruction would have influenced the jury's decision, especially in the face of strong evidence of guilt from the State. Indeed, throughout his numerous texts, Feola shows a predisposition to commit the crimes, not the opposite. For example, Feola repeatedly expressed concern that "Sam" might actually be law enforcement, but still engaged in the behavior—showing deliberateness notwithstanding his perception of the risk.

*Id.*

The state supreme court declined discretionary review of Petitioner's first PRP, stating the following:

To obtain this court's review, Feola must show that the Court of Appeals decision conflicts with a decision of this court or with a published Court of Appeals decision, or that he is raising a significant constitutional question or an issue of substantial public interest….

Feola [] argues that his trial counsel was ineffective in failing to correctly argue the law in support of an entrapment instruction and in not offering evidence of his lack of criminal history. [T]he Court of Appeals based its decision on Feola's failure to show the requisite prejudice for an ineffective assistance claim: a reasonable probability that the outcome would have been different in the absence of counsel's deficient performance. [] Feola does not demonstrate that this issue merits this court's review.

*Id.* at Ex. 13 (internal citations omitted).

As stated above, the Court's review of Petitioner's ineffective-assistance-of-counsel claim in Ground Three is highly deferential and the deference owed in this case is "near its apex" because the state courts' adjudication of that claim was heavily fact driven. *Sexton*, 585 U.S. at 968. Affording the appropriate level of deference, the Court finds the state courts' adjudication of Petitioner's ineffective-assistance-of-counsel claim was neither contrary to nor an unreasonable application of clearly established federal law. Rather, the state courts reasonably concluded that Petitioner failed to show the outcome of his trial would have been different if his attorney had presented an entrapment defense. Further, this conclusion was based on a reasonable determination of the facts, particularly in light of the other overwhelming evidence of Petitioner's guilt.

Because Petitioner has not shown that the state courts' denial of his ineffective-assistance-of-counsel claim was contrary to or an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts, Ground Three should be **DENIED**.

### III.    EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v Pinholster*, 563 U.S. 170, 181–82 (2011). A hearing is not required if the allegations would not entitle a petitioner to relief under § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes

habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* A federal court

may not consider any facts beyond the factual record presented to the state post-conviction relief

court, unless one of the limited exceptions of 28 U.S.C. § 2254(e)(2) applies. *Shinn v. Ramirez*,

596 U.S. 366, 381 (2022).

The Court finds that it is not necessary to hold an evidentiary hearing in this case

because, as discussed in Sect. II above, each Ground raised in the Amended Petition may be

resolved on the existing state court record.

## IV.    CERTIFICATE OF APPEALABILITY

Finally, a petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a

district court's dismissal of the federal habeas petition only after obtaining a certificate of

appealability from a District or Circuit Judge. *See* 28 U.S.C. § 2253(c). "A certificate of

appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial

of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by

demonstrating that jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000)).

No reasonable jurist could disagree with the above evaluation of the constitutional claims

raised by Petitioner or conclude that the issues presented in the Amended Petition should proceed

further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability.

## V.    CONCLUSION

For the reasons set forth above, the Court concludes that Grounds One and Two are

procedurally defaulted and that the state-court adjudication of the federal claim asserted in

Ground Three was not contrary to or an unreasonable application of clearly established federal

law, nor did it rest on an unreasonable determination of fact. Additionally, no evidentiary hearing is required in this case. Therefore, the Court recommends that the Amended Petition (Dkt. 23) be **DENIED**, this action be **DISMISSED with prejudice**, and a certificate of appealability not be issued.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **September 22, 2025**, as noted in the caption.

Dated this 5th day of September, 2025.

Grady J. Leupold
United States Magistrate Judge